Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| LILLYVETTE SALAS RIVERA<br><br>RECURRIDA<br><br>v.<br><br>UNIÓN DE TRONQUISTAS DE PUERTO RICO, INC.<br><br>RECURRENTE | KLRA202400606 | *Revisión Judicial* procedente Departamento Del Trabajo y Recursos Humanos Oficina de Mediación y Adjudicación<br><br>Caso Núm. AC-23-185<br><br>Sobre: Despido Injustificado (Ley Núm. 80) |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de enero de 2025.

### I.

El 28 de octubre de 2024, la Unión de Tronquistas de Puerto Rico, Inc. (Unión de Tronquistas o parte recurrente) presentó una *Petición de revisión de decisión administrativa* en la que solicitaron que revoquemos una *Resolución y orden* emitida el 30 de agosto de 2024 por la Oficina de Mediación y Adjudicación del Departamento del Trabajo y Recursos Humanos (OMA-DTRH o foro recurrido).[1] En el dictamen, la OMA-DTRH determinó que la señora Lillyvette Salas Rivera (señora Salas Rivera o parte recurrida) fue despedida injustificadamente de su empleo en la Unión de Tronquistas y, en consecuencia, ordenó el pago de la mesada, en conformidad con la *Ley sobre despidos injustificados*, Ley Núm. 80 de 1976, según enmendada, 29 LPRA sec. 185a *et seq.*, (Ley Núm. 80-1976).

---

[1] Archivada en autos y notificada el 3 de septiembre de 2024. Es de notar que el Índice del Apéndice de la *Petición de revisión de decisión administrativa*, expresa que dicho documento se encuentra en el Anejo III, en las págs. 8-62, pero ninguno de los documentos en el apéndice está enumerado consecutivamente, ni identificado por su Anejo.

Junto al recurso, la parte recurrente radicó una *Moción solicitando transcripción de la vista y elevación de documentos presentados en evidencia* en la que solicitó que autorizáramos la presentación de la Transcripción de la Prueba Oral (TPO) de la vista en su fondo celebrada el 4 de junio de 2024 por la OMA-DTRH por ser indispensable para analizar los señalamientos de error plasmados en el recurso de epígrafe.

El 29 de octubre de 2024, emitimos una *Resolución* en la que le concedimos a la parte recurrente un término final hasta el 4 de noviembre de 2024 para que informara el estatus de la grabación de la vista administrativa en su fondo.

El 8 de noviembre de 2024, emitimos una *Resolución* en la que, ante el incumplimiento de la Unión de Tronquistas con nuestras órdenes, dimos por desistidos los planteamientos de la parte recurrente en lo referente a la apreciación o la suficiencia de la prueba oral. En consecuencia, le concedimos a la parte recurrida hasta el 20 de diciembre de 2024 para presentar su alegato en oposición al recurso.

El 13 de diciembre de 2024, la señora Salas Rivera presentó un *Alegato de la parte recurrida* en el que solicitó que desestimáramos el recurso de epígrafe y confirmáramos la *Resolución y orden* recurrida.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el presente recurso de revisión de epígrafe y, en adelante, pormenorizamos los hechos procesales más relevantes a su atención.

**II.**

El caso de marras tiene su génesis el 27 de noviembre 2023 cuando la señora Salas Rivera radicó una *Querella* ante la OMA-DTRH en contra de la Unión de Tronquistas por despido

injustificado al amparo de la Ley Núm. 80-1976, *supra*.[2] En ella, planteó que la parte recurrente la despidió sin justificación y, por ello, debía pagarle $7,560.00 por concepto de la mesada. A esos efectos, narró que se ausentó por unos días por razones de salud de una hija y, al regresar a su trabajo, recibió una carta de despido por correo electrónico.

El 24 de enero de 2024, la OMA-DTRH remitió una *Notificación de querella y vista administrativa* en la que notificó la *Querella* y señaló una vista administrativa a celebrarse el 28 de febrero de 2024.[3]

El 1 de febrero de 2024, la Unión de Tronquistas presentó una *Contestación a la querella* en la que argumentó que la *Querella* no cumplió con los mínimos requeridos por el debido proceso de ley, negó los hechos alegados por la señora Salas Rivera y expresó que el despido estuvo motivado por un patrón insostenible de ausentismo y faltas a las normas en el empleo.[4] Según alegó, ante un patrón de ausencias de la parte recurrida, se le aplicó disciplina progresiva, consistente en amonestaciones verbales y escritas, y se le intentó proveer alternativas para ponerle fin, sin que esta accediera. A ello, añadió que, en una ocasión, la parte recurrida abandonó el empleo previo a su hora de salida sin autorización en un acto claro de insubordinación, lo cual provocó desestabilización en su área de trabajo. En la misma línea, adujo que la parte

---

[2] La fecha de presentación de la *Querella* surge de la *Resolución y orden* recurrida, no de la copia del documento incluida en el Apéndice de la *Petición de revisión de decisión administrativa.* Según el índice del Apéndice, este documento se encuentra en el Anejo VI, en las págs. 75-88. Sin embargo, al igual que el resto de los documentos, este no aparece enumerado por página, ni identificado por su número de anejo de manera alguna.

[3] Este incidente procesal es relatado por la OMA-DTRH en la *Resolución y orden*, y se incluyó copia de la *Notificación de querella y vista administrativa* en el Apéndice de la *Petición de revisión de decisión administrativa,* pero de ella no surge la fecha de notificación y archivo. Al igual que el resto de los documentos, este no aparece enumerado por página, ni identificado por su número de anejo de manera alguna.

[4] Según el índice del Apéndice de la *Petición de revisión de decisión administrativa*, este documento se encuentra en el Anejo V, en las págs. 71-74. Sin embargo, al igual que el resto de los documentos, este no aparece enumerado por página, ni identificado por su número de anejo de manera alguna.

recurrida demostró un patrón de conducta desafiante hacia sus supervisores y compañeros de trabajo, haciendo caso omiso a las directrices que se le impartían.

Luego de múltiples trámites procesales, el 4 de junio de 2024, la OMA-DTRH celebró una vista adjudicativa a la que compareció: la señora Salas Rivera, acompañada de su representante legal; el señor Argenis Carrillo Ramos (señor Carrillo Ramos) como testigo y representante de la Unión de Tronquistas, acompañada de la representación legal de la organización; y la señora Gladys Cordero Sánchez (señora Cordero Sánchez) como testigo de la parte recurrente.[5]

El 30 de agosto de 2024, la OMA-DTRH emitió la *Resolución y orden* recurrida en la que concluyó que la señora Salas Rivera fue despedida injustificadamente y le ordenó a la Unión de Tronquistas pagar la mesada correspondiente.[6] En el dictamen, el foro recurrido, tras evaluar la prueba documental y testifical desfilada, formuló las siguientes sesenta y dos (62) determinaciones de hechos:

1. La querellante, Lillyvette Salas Rivera, trabajó para la querellada, Unión de Tronquistas de Puerto Rico, Inc., mediante contrato a tiempo indeterminado, desde el 1 de abril de 2019 hasta el 2 de septiembre de 2022.
2. La parte querellada es una entidad sin fines de lucro que se dedica a la representación de los intereses de los empleados frente a sus patronos, que ofrece el servicio de organización y representación de esos trabajadores.
3. La querellante se desempañaba como Secretaria en el Departamento de Arbitraje de la querellada.
4. Las funciones de la querellante consistían en realizar trabajo clerical, como recibir llamadas, recibir, notificar y calendarizar los señalamientos de las vistas de arbitraje, entre otros.
5. La jornada semanal de la querellante consistía aproximadamente de cuarenta (40) horas, con un horario de 7:30 de la mañana a 4:30 de la tarde.
6. El salario más alto devengado por la querellante fue de DIEZ DÓLARES CON CINCUENTA CENTAVOS ($10.50) por hora.
7. El supervisor directo de la querellante durante el año 2022 fue el señor Argenis Carrillo Ramos, Tesorero y Administrador de la Unión de Tronquista de Puerto Rico, Inc.

---

[5] Esta información surge de la *Resolución y Orden* recurrida.
[6] Véase nota al calce 1.

8. La señora Gladys Cordero Sánchez, era la Directora de Finanzas, y la persona encargada de preparar la nómina de los empleados de la Unión querellada.

9. La querellante no recibió copia escrita del Manual de Empleados de la querellada.

10. La querellante no recibió copia escrita sobre Política de Asistencia y/o Notificación de Ausencias de la querellada.

11. La querellante no recibió copia escrita sobre las Políticas de Licencias por Vacaciones y Enfermedad de la querellada.

12. La Unión de Tronquista[s] de Puerto Rico, Inc. es [sic] está abierta al público de lunes a viernes.

13. Surge de la copia del talonario de la nómina del 21 al 27 de febrero de 2022, que a la querellante se le cargó cuatro (4) horas a la licencia de enfermedad.

14. Surge de la copia del talonario de la nómina del 28 de marzo a 3 de abril de 2022, que a la querellante se le cargó un (1) día a la licencia de enfermedad.

15. Surge de la copia del talonario de la nómina del 18 al 24 de abril de 2022, que a la querellante se le cargó veinte (20) horas a la licencia de enfermedad, equivalentes a dos días y medios (21/2) de trabajo.

16. La querellante admitió haberse ausentado por enfermedad medio día el 18 de abril de 2022, debido a que su madre se cayó por las escaleras y se fracturó un tobillo, ante esa emergencia la querellante trabajó hasta la 1:00 de la tarde, y le fue cargado a la licencia de enfermedad.

17. La querellante admitió haberse ausentado por enfermedad el 19 de abril de 2022, debido a que se mantuvo en cuarentena por haber estado en contacto con una persona positiva al COVID-19, siguiendo las directrices del Departamento de Salud, según los días de exposición, y le fue cargada a la licencia de enfermedad.

18. La querellante admitió haberse ausentado por enfermedad el 23 de abril de 2022, debido a que su hija menor de 11 meses de nacida se encontraba enferma, lo que provocó que no consiguiera cuido para ella, y le fue cargada a la licencia de enfermedad.

19. La querellante no estuvo ausente el 20 de abril de 2022.

20. Surge de la copia del talonario de la nómina del 25 de abril al 1 de mayo de 2022, que a la querellante se le pagaron veinticuatro (24) horas, equivalente a tres (3) días de trabajo, y no se le cargó horas a ninguna licencia.

21. La querellante admitió haberse ausentado por enfermedad el 25 de abril de 2022, debido a que su hija menor continuaba enferma y tuvo que recoger en el colegio a su hija mayor debido a un brote de Micoplasma y COVID-19.

22. La querellante admitió haberse ausentado por enfermedad el 26 de abril de 2022, debido a que su hija menor de 11 meses de nacida se encontraba enferma, lo que provocó que no consiguiera cuido para ella.

23. La querellante admitió haberse ausentado por enfermedad el 29 de abril de 2022, debido a que su hija menor de 11 meses de nacida se encontraba enferma, lo que provocó que no consiguiera cuido para ella.

24. El 2 de mayo de 2022, el supervisor de la querellante Argenis Carrillo le notificó a la querellante un Memo Escrito, por alegadas ausencias injustificadas, y le exhortó a que de no estar de acuerdo podría recurrir a la Junta de Directores según "nuestro reglamento".

25. En el referido Memo el patrono querellado indicó contar con un Reglamento.

26. La Unión querellada tenía una Política o Reglamento para Impugnar u Objetar las Medidas Disciplinarias aplicadas a sus empleados.

27. La querellante no recibió copia de la Política o Reglamento para Impugnar u Objetar las Medidas Disciplinarias aplicadas a sus empleados.

28. La querellante desconocía el procedimiento establecido para impugnar u objetar medidas disciplinarias.

29. El 5 de mayo de 2022, la querellante mediante correo electrónico solicitó un ajuste en su horario justificado por la situación médico familiar que atravesaba, y según lo dialogado con su supervisor Argenis Carrillo. Además, informó su disponibilidad para trabajar medio día los martes y viernes temporeramente en lo que resolvía la situación.

30. El 9 de mayo de 2022, el patrono querellado denegó el ajuste de horario temporal previamente recomendado, luego de que la querellante informara haber realizado los arreglos necesarios para trabajar medio día los martes y viernes durante el mes de mayo de 2022, y así poder asistir a trabajar. En la alternativa, la querellada le ofreció [que] reponer las horas durante los fines de semana, días en que la Unión no estaba en operaciones, sin explicar las razones para no conceder el ajuste de horario solicitado ni la alternativa ofrecida.

31. El 9 de mayo de 2022, la querellante reiteró y justificó por escrito su necesidad de un ajuste de horario temporero hasta el 25 de mayo de 2022, consistente en que se le permitiera trabajar medio día los martes y los viernes hasta finales del mes de mayo de 2022.

32. A la fecha de realizar la solicitud de ajuste de horario temporal la querellante era madre soltera de dos niñas menores.

33. Surge de la copia del talonario de la nómina del 2 al 8 de mayo de 2022, que a la querellante se le pagaron veinticuatro (24) horas, equivalente a tres (3) días de trabajo, y no se le cargó horas a ninguna licencia.

34. La querellante admitió haberse ausentado por enfermedad el 3 de mayo de 2022, debido a que su hija menor se encontraba enferma, lo que provocó que no consiguiera cuido para la menor.

35. Surge de la copia del talonario de la nómina del 9 al 15 de mayo de 2022, que a la querellante se le pagaron veinticuatro (24) horas, equivalente a tres (3) días de trabajo, y no se le cargó horas a ninguna licencia.

36. La querellante estuvo ausente del 2 al 7de junio de 2022 por haberse contagiado COVID-19.

37. El 7 de junio de 2022, la querellante remitió mediante correo electrónico el resultado de sus pruebas diagnósticas de COVID-19 y solicitó que le indicara cuándo podría reportarse a trabajar.

38. Surge de la copia del talonario de la nómina del 6 al 12 de junio de 2022, que a la querellante se le cargó dos (2) días a la licencia de enfermedad durante esa semana laboral.

39. El 16 de junio de 2022, la querellante se ausentó por razones médicas, específicamente por haber llevado a su hija a vacunar.

40. El 17 de junio de 2022, la querellante estuvo suspendida de empleo y sueldo por ocho (8) horas, equivalentes a un (1) día de trabajo, por el alegado por patrón de ausentismo. La carta de suspensión no hace referencia a las fechas de las ausencias.

41. Surge de la copia del talonario de la nómina del 13 al 19 de junio de 2022, que a la querellante se le pagaron

veinticuatro (24) horas, equivalente a tres (3) días de trabajo.

42. El 17 de junio de 2022, estuvo suspendida de empleo y sueldo, y la ausencia del 16 de junio de 2022 no le fue pagada con cargo a ninguna licencia, teniendo balance disponible en la licencia de enfermedad.

43. La solicitud de ajuste de horario temporera realizada por la querellante fue realizada en las siguientes fechas: 5 y 9 de mayo de 2022.

44. La querellante fue suspendida de empleo y sueldo el junio 17 [sic] de 2022.

45. Surge de la copia del talonario de la nómina del 11 al 17 de julio de 2022, que en esa semana laboral a la querellante se le cargó ocho (8) horas a la licencia de enfermedad, equivalentes a un (1) día de trabajo.

46. Surge de la copia del talonario de la nómina del 1 al 7 de agosto de 2022, que en esa semana laboral a la querellante se le cargó ocho (8) horas a la licencia de enfermedad, equivalentes a un (1) día de trabajo.

47. Surge de la copia del talonario de la nómina del 22 al 28 de agosto de 2022, que en esa semana laboral a la querellante se le cargó dieciséis (16) horas a la licencia de enfermedad, equivalentes a dos (2) días de trabajo

48. La querellante admitió haberse ausentado por enfermedad la semana previa a su despido debido a que su hija mayor se encontraba enferma con COVID-19, con síntomas que requirieron atención médico-hospitalaria.

49. La querellante notificó al señor Argenis Carrasquillo y a la señora Gladys Cordero que se ausentaría debido a la condición de salud de su hija.

50. La querellante mantuvo al tanto a la señora Gladys Cordero a través de mensajes de texto del estado de salud de su hija con relación al COVID-19 que padecía la menor.

51. El 2 de septiembre de 2022, luego de haberse reintegrado a sus labores tras la enfermedad de su hija, después de haber completado su jornada laboral diaria, la querellante recibió la Carta de Despido, notificada mediante correo electrónico.

52. El señor Argenis Carrillo Ramos, expresó ser el encargado de determinar a qué licencia, si alguna, se cargaban las ausencias de los empleados.

53. La señora Gladys Cordero Sánchez, expresó ser la encargada de determinar a qué licencia, si alguna, se cargaban las ausencias de los empleados.

54. Durante la vista adjudicativa, la parte querellada no presentó ni alegó c[ó]mo sus empleados registraban la asistencia diaria y las horas trabajadas.

55. Previo a su despido la querellante no fue objeto de señalamientos o quejas sobre su desempeño y competencia laboral.

56. Las ausencias de la querellante no provocaron que se afectara la ordenada marcha ni el funcionamiento y servicios ofrecidos por la Unión querellada.

57. El salario m[á]s alto devengado por la querellante durante su relación laboral con la Unión fue MIL SEISCIENTOS OCHENTA DÓLARES ($1,680.00).

58. Posterior a su despido, la querellante acudió al Negociado de Normas de Trabajo (en adelante NNT), componente investigativo del Departamento del Trabajo que realizó investigación de la reclamación y preparó el Formulario NNT-325-DP-Ley 4, Hoja de Cómputos de la Reclamación sobre Despido Injustificado.

59. Conforme se desprende del Formulario NNT-325-DP-Ley 4, Cómputos de Reclamaciones, Despido Injustificado, el período cubierto para realizar el cómputo de la

reclamación es del 1 de abril de 2019 hasta el 2 de septiembre de 2022.

60. Conforme se desprende del Formulario NNT-325-DF-Ley 4, Cómputos de Reclamaciones, Despido Injustificado, la indemnización básica a la que la querellante tiene derecho asciende a CINCO MIL CUARENTA DÓLARES ($5,040.00), equivalente a tres (3) meses de sueldo.

61. Conforme se desprende del Formulario NNT-325-DP-Ley 4, Cómputos de Reclamaciones, Despido Injustificado, la querellante tiene derecho a una indemnización progresiva adicional que asciende a DOS MIL QUINIENTOS VEINTE DÓLARES ($2,520.00), equivalente a dos (2) semanas de sueldo por cada año de servicio completado.

62. Conforme se desprende del Formulario NNT-325-DP-Ley 4, Cómputos de Reclamaciones, Despido Injustificado, la querellante tiene derecho a una indemnización total que asciende a SIETE MIL QUINIENTOS SESENTA DÓLARES ($7,560.00).[7]

Sobre la vista adjudicativa, la OMA-DTRH reseñó en extenso los testimonios desfilados. En la vista, declararon la señora Cordero Sánchez, Directora de Finanzas de la Unión de Tronquistas; el señor Carrillo Ramos, Tesorero y Administrador de la Unión de Tronquistas; y la señora Salas Rivera. Como prueba documental, consignó que cada parte presentó lo siguiente:

(A) Por la parte recurrida:
  1) Correo electrónico enviado por la señora Salas Rivera a Argenis Carrillo con copia a la Junta de Directores, con fecha del 9 de mayo de 2022.
  2) Memorando de Rafael Rosario, Secretario Tesorero, al personal administrativo de la Unión de Tronquistas sobre el COVID-19 y la Orden Ejecutiva OE-2020-023.

(B) Por la parte recurrente:
  1) Bitácora de Ausencias Lillyvette Salas 2022, con copia de talonarios.
  2) Correo electrónico de Argenis Carrillo, asunto "Memo Escrito", con fecha de 2 de mayo de 2022.
  3) Correo electrónico de Argenis Carrillo, asunto "Carta Ausencias" con fecha de 9 de mayo de 2022, en contestación al correo electrónico remitido por la querellante, el 5 de mayo de 2022.
  4) Suspensión de empleo de la querellante, con fecha de 16 de julio de 2022.
  5) Carta de despido de la querellante, con fecha de 2 de septiembre de 2022.

(C) Por ambas partes:
  1) Hoja de cómputos de la Reclamación, Formulario NNT-325-DP-Ley 4.
  2) Correo electrónico remitido por Lillyvette Salas a la Junta de Directores, con fecha de 5 de mayo de 2022.
  3) Correo electrónico remitido por Lillyvette Salas a Argenis Carrillo con copia a la Junta de Directores, con fecha de 7 de junio de 2022, notificando resultados positivos de COVID-19.

---

[7] Íd.

En desacuerdo, en una *Moción de reconsideración* con fecha del 23 de septiembre de 2024, la Unión de Tronquistas solicitó al foro recurrido que reconsiderara su dictamen.

El 26 de septiembre de 2024, la OMA-DTRH emitió, notificó y archivó una *Resolución y orden* en la que rechazó de plano la reconsideración solicitada por la parte recurrente.

Inconforme, el 28 de octubre de 2024, la Unión de Tronquistas radicó la *Petición de revisión de decisión administrativa* en la que le imputó al foro recurrido la comisión del siguiente error:

> ERRÓ LA OFICINA DE MEDIACIÓN Y ARBITRAJE AL DETERMINAR QUE EL DESPIDO DE LA RECURRIDA FUE INJUSTIFICADO A PESAR [DE] QUE NO SE PRESENTÓ EVIDENCIA SUSTANCIAL EN EL R[É]CORD ADMINISTRATIVO PARA SUSTENTAR TAL DETERMINACIÓN.

Es su posición que la OMA-DTRH no tuvo en cuenta la evidencia sustancial que obra en el expediente, aplicó erróneamente el derecho relevante y actuó arbitraria y caprichosamente. A esos efectos, arguye que: (1) el despido de la señora Salas Rivera fue justificado porque no tuvo interés alguno de continuar su empleo al abandonarlo; (2) no había otra alternativa que no fuera el despido porque era insostenible que una empleada encargada de prestar servicios en la tarea de la organización de manejar casos de arbitraje se ausentara constantemente y sin justificación; (3) invocó la política pública incorrecta sobre el COVID-19 para el 2022 porque el hecho de que un familiar tuviese esa enfermedad no era justificación suficiente para ausentarse al trabajo.

Sobre los hechos según apreciados por el foro recurrido, argumenta que: (1) la OMA-DTRH ignoró la disciplina progresiva impuesta a la parte recurrida; (2) determinó incorrectamente que el señor Carrillo Ramos supervisaba a la parte recurrida desde el 2022 cuando la prueba demostró que lo hacía desde el 2020; (3) la evidencia demostró el problema de ausentismo crónico e

insubordinación de la parte recurrida; (4) la prueba de disciplina progresiva demuestra que, en varias ocasiones, se le indicó a la parte recurrida que no se podía ausentar, pero esta insistió en no presentarse al empleo; (5) la parte recurrida no presentó prueba alguna para justificar sus ausencias; y (6) la única prueba de que se ausentó justificadamente fue la ocasión en la que ella padeció COVID-19, lo cual provocó que esa instancia no fuera utilizada como razón para disciplinarla o despedirla.

El 13 de diciembre de 2024, la señora Salas Rivera presentó un *Alegato de la parte recurrida* en la que solicitó que desestimemos el recurso de revisión y confirmemos la *Resolución y Orden* recurrida. Según arguye, la Unión de Tronquistas no logró probar que la parte recurrida incidió en ausentismo, para lo cual intentó utilizar infructuosamente las ausencias por enfermedad de la empleada. Ante ello, esboza que las referidas ausencias fueron justificadas y cargadas a su licencia de vacaciones. Asimismo, enfatiza que el dictamen evalúa uno a uno los testimonios vertidos, aquilatando la credibilidad de los testigos y expresando que lo declarado por los testigos de la parte recurrente fue sustancialmente contradictorio. La parte recurrente nunca presentó la TPO que se le autorizó, por lo que la tuvimos por desistida en lo referente a los argumentos sobre la apreciación errónea de la evidencia desfilada ante el foro administrativo.

**III.**

**A.**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.*, (LPAU) establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio

dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. *Capó Cruz v. Junta de Planificación*, 204 DPR 581, 590-591 (2020); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Es decir, que este tipo de revisión busca limitar la discreción de las agencias y garantizar que estas desempeñen sus funciones de acuerdo con los confines de la ley. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008). De la mano con esto, es norma reiterada de derecho que los foros revisores le concederán gran deferencia y consideración a las decisiones de las agencias administrativas, debido a la vasta experiencia y el conocimiento especializado sobre los asuntos que le fueron delegados. *Graciani Rodríguez v. Garage Isla Verde, LLC,* 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, supra. Conforme a ello, los tribunales deben ser cautelosos al intervenir con las decisiones de los organismos administrativos. *Metropolitana, S.E. v. A.R.Pe.*, 138 DPR 200, 213 (1995); *Gallardo v. Clavell*, 131 DPR 275, 289–290 (1992).

Por las razones antes aludidas, las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección. *Capó Cruz v. Junta de Planificación*, supra; *Rolón Martínez v. Supte. Policía*, supra; *García Reyes v. Cruz Auto Corp.*, supra, pág. 892. La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 130 (1998).

Así, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors,* 161 DPR 69, 76 (2004). Cónsono con ello, será necesario determinar si la agencia

actuó de forma arbitraria, ilegal o de manera tan irrazonable que su actuación constituyó un abuso de discreción. *Rolón Martínez v. Supte Policía,* supra.

Según ha quedado establecido como norma general, el ejercicio de revisión judicial de una decisión administrativa se limita a tres asuntos: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial que obra en el expediente administrativo; y (3) la revisión completa y absoluta de las conclusiones de derecho. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

De esta forma, en el contexto de las <u>determinaciones de hechos</u> realizadas por las agencias administrativas, nuestro más alto foro ha pautado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero Mercado v. Toyota,* 163 DPR 716, 727-728 (2005); *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 397 (1999). Dentro de este marco, evidencia sustancial se entiende como "aquella evidencia pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión". *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999). Por ello, la parte que alegue que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. *Metropolitana S.E. v. A.R.Pe.*, 138 DPR 200, 213 (1995) citando a *Hilton Hotels International, Inc. v. Junta de Salario Mínimo,* 74 DPR 670, 686 (1983).

En otras palabras, la parte recurrente tiene la obligación de derrotar la presunción de corrección de los procesos y de las decisiones

administrativas. ***Fac. C. Soc. Aplicadas, Inc. v. C.E.S.***, 133 DPR 521, 532 (1993). Si no demuestra que existe esa otra prueba, las determinaciones de hechos del organismo administrativo deben ser sostenidas por el tribunal revisor. ***Ramírez v. Depto. de Salud***, supra.

Ahora bien, cuando se trate de conclusiones de derecho que no envuelvan interpretaciones dentro del área de especialización de la agencia, éstas se revisarán por los tribunales sin circunscribirse al razonamiento que haya hecho la agencia. ***Capó Cruz v. Junta de Planificación***, supra; ***Pacheco v. Estancias***, 160 DPR 409, 432 (2003); ***Rivera v. A & C Development Corp.***, 144 DPR 450, 461 (1997). Cuando las determinaciones de las agencias estén entremezcladas con conclusiones de derecho, el tribunal tendrá amplia facultad para revisarlas, como si fuesen una cuestión de derecho propiamente. ***Pacheco v. Estancias***, supra, pág. 433; ***Rivera v. A & C Development Corp.***, *supra.* En nuestro ordenamiento jurídico, es norma reiterada que, en el proceso de revisión judicial, los tribunales tienen la facultad de revocar al foro administrativo en materias jurídicas. Véase, además, la Sec. 4.5 de LPAU, *supra* sec. 9675.

Es pertinente señalar que nuestro sistema de adjudicación administrativo busca "alentar la solución informal de las controversias", según establece la Sec. 1.2 de la LPAU, *supra* sec. 9602. Para ello, la LPAU permite que las agencias establezcan las reglas y procedimientos que regirán ante sí para la solución rápida e informal de las controversias; siempre salvaguardando los derechos garantizados por ley. Íd. Por lo cual, las agencias no quedan sometidas a un procedimiento rígido que obstaculiza la producción de una solución rápida, justa y económica. Íd.

En suma, la referida deferencia debe ceder cuando se demuestre que: (1) la decisión no está basada en evidencia

sustancial; (2) la agencia ha errado en la aplicación de la ley; (3) la actuación de la agencia resulta ser arbitraria, irrazonable o ilegal; y (4) la actuación administrativa lesiona derechos constitucionales fundamentales. ***The Sembler Co. v. Mun. de Carolina***, 185 DPR 800, 822 (2012) (*citando a* ***Empresas Ferrer v. A.R.PE.***, 172 DPR 254, 264 (2007)).

**B.**

El Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, es el estatuto rector de los procedimientos ante esta Curia. Según la Regla 2 del Reglamento del Tribunal de Apelaciones, *supra*, R. 2, las normas que impone deberán ser interpretadas de forma que propicien un sistema de justicia que provea acceso, sea sensible a la realidad particular de nuestra sociedad e informe a la ciudadanía sobre sus derechos y responsabilidades.

Para lograr la más cabal y eficiente atención de los recursos, el Reglamento del Tribunal de Apelaciones estatuye diversas reglas aplicables a los recursos de revisión judicial. Entre ellas, figura la tramitación de la TPO cuando una parte plantea cuestiones relacionadas con errores en la apreciación o suficiencia de la prueba por parte del foro recurrido.

A esos efectos, la Regla 59 del Reglamento del Tribunal de Apelaciones, *supra*, R. 59, dispone que la parte recurrente seguirá los preceptos de la Regla 76 del Reglamento del Tribunal de Apelaciones, *supra*, R. 76, cuando plantee alguna cuestión relacionada con errores en la apreciación o suficiencia de la prueba. Es decir, tiene la obligación de presentar una TPO o una exposición narrativa de la prueba para colocar a esta Curia en posición de revisar la determinación recurrida.

Para ello, según la Regla 66 del mencionado reglamento, *supra*, R. 66, dicha parte deberá hacer constar que será necesario recurrir a la reproducción de la prueba oral mediante una moción

por separado, presentada junto a su escrito inicial de revisión. A su vez, preceptúa que, en dicha moción, la parte interesada deberá sustanciar y probar la necesidad de recurrir a la prueba oral, con especial atención a las determinaciones de hechos de la agencia y haciendo referencia a las cuestiones planteadas y el contenido de los testimonios. Como sanción al incumplimiento, la referida Regla permite que la omisión de cumplir con ella cause que se declare sin lugar la moción. Por último, reglamenta que la reproducción de la prueba oral deberá hacerse conforme a las Reglas 76 y 76.1 del Reglamento del Tribunal de Apelaciones, *supra*, R. 76 y 76.1, quedando la agencia administrativa obligada a lo mismo que el Tribunal de Primera Instancia.

En lo pertinente, la Regla 76.1 del Reglamento del Tribunal de Apelaciones, *supra*, le impone a la parte recurrente la responsabilidad de desplegar toda la diligencia requerida para dar cumplimiento a los plazos dispuestos por la regla y notificar a esta Curia cuando no haya cumplido.

Ausente el cumplimiento de las referidas reglas, esta Curia no se encuentra en posición para examinar errores en la apreciación o suficiencia de la prueba. De lo contrario, intervendría incorrecta y arbitrariamente en las determinaciones de hechos del foro recurrido sin poseer las herramientas para ello.

Así lo ha dejado claro nuestro Tribunal Supremo al resolver que, cuando las determinaciones de hecho impugnadas se basan en la prueba testifical desfilada en el proceso administrativo y la credibilidad que le brindó la agencia, "es **imprescindible** que se traiga la transcripción de la vista celebrada o una exposición narrativa de la prueba a la consideración del foro revisor". ***Camacho Torres v. AAFET,*** 168 DPR 66, 92 (2006) (Ennegrecido nuestro). Ausente tal prueba, difícilmente se descartará la determinación impugnada. Íd. Además, tal ha sido la interpretación de nuestro más

alto foro ante la impugnación de la apreciación de la prueba por parte del Tribunal de Primera Instancia. *Álvarez v. Rivera,* 165 DPR 1, 13-15 (2005); *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 289 (2011); *González Hernández v. González Hernández,* 181 DPR 746, 776-777 (2011).

**IV.**

En la *Resolución y orden* recurrida, la OMA-DTRH determinó que el despido de la señora Salas Rivera fue injustificado y, por consiguiente, ordenó a la Unión de Tronquistas a pagarle la mesada según fue reclamada. Para fundamentar estas conclusiones, el foro recurrido reseñó extensamente los testimonios desfilados y formuló sesenta y dos (62) determinaciones de hechos.

En desacuerdo, la Unión de Tronquistas plantea que el foro recurrido erró al concluir que el despido fue injustificado porque no se presentó evidencia sustancial para sustentar dicha determinación. Según plantea, el foro recurrido aplicó erróneamente el derecho relevante al invocar la política pública incorrecta sobre el COVID-19 y debió entender que el despido fue justificado porque, ante un alegado patrón de ausentismo, la señora Salas Rivera no tuvo interés de continuar su empleo y la parte recurrente no tuvo otra alternativa que destituirla.

En específico, sobre la apreciación de la prueba desfilada, reclama que: (1) la OMA-DTRH hizo caso omiso a la disciplina que se le impuso a la parte recurrida; (2) el foro recurrido se equivocó al determinar que el señor Carrillo Ramos supervisó a la parte recurrida desde el 2022 cuando lo hizo desde el 2020; (3) se demostró el problema de ausentismo crónico e insubordinación de la parte recurrida; (4) reiteradamente, se le indicó a la parte recurrida que no se podía ausentar, pero las ausencias persistieron; (5) la parte recurrida no presentó prueba para justificar sus ausencias; y (6) la única prueba de que se ausentó justificadamente

fue la ocasión en la que ella padeció COVID-19, razón por la cual no se utilizó esa instancia para disciplinarla.

Para demostrar sus planteamientos, la parte recurrente sometió una moción en cumplimiento con la Regla 66 del Reglamento del Tribunal de Apelaciones, *supra*, en la que solicitó que se autorizara la TPO de la vista en su fondo porque "la misma es indispensable para analizar los señalamientos de error en el Recurso de Revisión". Sin embargo, pese a que autorizamos su solicitud, incumplió con los plazos concedidos para lograr la reproducción de la prueba oral.

En apoyo de la *Resolución y orden* recurrida, la señora Salas Rivera arguye que la Unión de Tronquistas no logró demostrar que la parte recurrida incidió en ausentismo, intentando utilizar como patrón sus ausencias por enfermedad, justificadas y cargadas a licencias disponibles. Asimismo, subraya que el dictamen recurrido repasó minuciosamente los testimonios vertidos, adjudicando credibilidad y señalando las contradicciones en lo declarado por los testigos de la parte recurrente.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso, en correcta práctica adjudicativa apelativa, resolvemos que procede confirmar la *Resolución y orden* recurrida, toda vez que la Unión de Tronquistas no nos puso en posición de evaluar su señalamiento de error al no presentar la TPO. Todos sus argumentos giran en torno a la apreciación por la OMA-DTRH de la prueba testifical y, ante ello, resultaba imprescindible que la parte recurrente reprodujera la prueba oral desfilada. Solicitó, y así se autorizó, presentar una TPO. No obstante, omitió su responsabilidad, en incumplimiento con las Reglas 59, 66, 76 y 76.1 del Reglamento del Tribunal de Apelaciones, *supra*. Por eso, ausente una TPO, sus planteamientos, los cuales atacan directamente la

apreciación y la suficiencia de la prueba oral, deben tenerse por no puestos.

Aún más, coincidimos con la propia apreciación de la Unión de Tronquistas sobre la reproducción de la prueba oral, quien, en una moción presentada junto al escrito inicial – en cumplimiento de la Regla 66 del Reglamento del Tribunal de Apelaciones, *supra*, – dejó claro que la presentación de la TPO era indispensable para analizar los señalamientos de error que levantó en su recurso. Por eso, tal y como auguró, sin ella no estamos en posición para evaluar sus planteamientos.

En todo caso, de la *Resolución y orden* recurrida surge claramente que el foro recurrido fundamentó extensamente su determinación, narrando la prueba testifical según desfilada y formulando sesenta y dos (62) determinaciones de hechos. Manifestó, además, la credibilidad que le mereció los testimonios vertidos ante sí. Por lo cual, no corresponde que intervengamos con el dictamen del foro administrativo, el cual goza de una presunción de legitimidad, validez y corrección. Mucho menos se justifica que intervengamos o alteremos las determinaciones de hechos cuando están sostenidas por la evidencia sustancial que surge del expediente, la parte recurrente incumple su obligación de derrotar la presunción de corrección que las cobija y no apunta nuestra atención a aquella otra prueba en el récord que reduce o menoscabe el peso de la evidencia considerada por el foro recurrido. De las determinaciones de hechos, las cuales la Unión de Tronquistas no refuta, surge que la mayoría de las ausencias de la señora Salas Rivera fueron cargadas a sus licencias disponibles y que hizo gestiones con su patrono para recibir autorización para modificar su horario de trabajo, las cuales resultaron infructuosas al ser denegadas.

Por todo lo anterior, corresponde confirmar la *Resolución* y orden recurrida, al ser conforme a derecho.

**V.**

Por los fundamentos pormenorizados, se *confirma* la *Resolución y orden* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones